**Robert Allen BURTON, Plaintiff-Appellee,**

v.

**STATE OF OHIO, ADULT PAROLE AUTHORITY, Defendant-Appellant.**

**No. 85–3055.**

United States Court of Appeals, Sixth Circuit.

Argued June 3, 1986.

Decided Aug. 6, 1986.

Rita S. Eppler, William J. Steele, Asst. Atty. Gen. (argued), Columbus, Ohio, for defendant-appellant.

Donald P. Leone (argued), Youngstown, Ohio, for plaintiff-appellee.

Before MARTIN, KRUPANSKY and GUY, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Robert Burton filed this action for race discrimination under Title VII, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981[1] against his former employer, the Ohio Adult Parole Authority. After a two-week bench trial, the district court granted judgment to Burton, holding that the Parole Authority failed to rebut Burton's prima facie case of discrimination by articulating a legitimate, nondiscriminatory reason for its failure to grant him a promotion. The Parole Authority appeals this ruling.

Robert Burton, a black male, began work with the Parole Authority in December, 1972. He was hired as a Parole Officer 2, and remained in this position until January,

---

1. The district court did not refer to the section 1981 claim in its judgment, and the parties do not argue the claim separately in this appeal.

1976 when Ohio implemented a statewide reclassification. At that time, Burton was reclassified as a Parole Officer 1, a lower-ranking position than Parole Officer 2.

In March, 1977, a Parole Officer 2 position became available in the Parole Authority's Youngstown office. The position was advertised on a statewide basis. Five people, including Burton, applied for the position. All five applications were forwarded to E.H. Harris, Superintendent of the Parole Supervision Section of the Parole Authority. Harris selected John Severn, a white male, for the position. Severn began his duties as Parole Officer 2 in the Youngstown office on July 31, 1977.

As a result of another statewide reclassification, Burton was reclassified to Parole Officer 2 on October 9, 1977. The district court determined, and Burton does not challenge on appeal, that Burton voluntarily resigned this position on July 10, 1978. After satisfying the appropriate administrative prerequisites, he filed this suit on April 14, 1980 alleging claims of race discrimination and retaliatory discharge.[2]

The Parole Authority argues that the district court's judgment for Burton should be reversed because although the court held for the plaintiff, the judge expressly noted: "I don't suggest for one moment that there has been any proof of intentional discrimination." The Parole Authority challenges the district court's finding that it did not articulate a legitimate, nondiscriminatory reason for failing to promote Burton, pointing to the recommendation of John Severn given by Valerian Kostyk, a supervisor of both Burton and Severn. The Parole Authority contends that Burton's theory of the case, "disparate treatment," requires that the plaintiff prove intentional discrimination on the part of the defendant.

Burton's suit was premised on the fact that he failed to receive a promotion to a vacant position, and a white person was given the position in his place. This claim is one of disparate treatment, and falls under the guidelines established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977); *Grano v. Department of Development of City of Columbus*, 637 F.2d 1073 (6th Cir.1980).

*McDonnell Douglas* clearly delineates the burdens of proof allocated to litigants in disparate treatment cases under Title VII. First, in order to establish a prima facie case of race discrimination, the plaintiff must show:

(1) that he belongs to a racial minority;

(2) that he applied and was qualified for a job for which the employer was seeking applicants;

(3) that, despite his qualifications, he was rejected; and

(4) that, after his rejection, the employer filled the position with another person who was not a member of the plaintiff's racial minority.[3]

*McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.

If the plaintiff carries this burden, the defendant assumes the burden of production "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* Significantly, the burden of persuasion remains with the plaintiff at all times; only the burden of *production* shifts between the parties. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 97 S.Ct. 1843, 67 L.Ed.2d 207 (1981). The burden of production imposed on the

---

**2.** Burton did not file a cross-appeal challenging the district court's judgment for the Parole Authority on the retaliatory discharge claim.

**3.** The replacement requirement remains viable in this case alleging the discriminatory denial of a promotion. *Compare Duchon v. Cajon Co.,*

791 F.2d 43, 46 (6th Cir.1986); *Beaven v. Commonwealth of Kentucky*, 783 F.2d 672, 676–77 (6th Cir.1986) (replacement issue irrelevant in case of disparate discipline where personal affair is alleged).

defendant is only that of articulating a legitimate, nondiscriminatory reason, "not of proving the absence of discriminatory motive." *Board of Trustees v. Sweeney*, 439 U.S. 24, 24, 99 S.Ct. 295, 295, 58 L.Ed.2d 216 (1978).

In most Title VII cases, both parties carry their initial burdens of production, leaving the case to be decided on the issue of pretext. At this stage, the court determines whether the reason offered by the defendant is a pretext for discrimination. This issue is, of course, the original question in a disparate treatment case: whether the defendant has intentionally discriminated against the plaintiff. *Furnco Constr. Co. v. Waters*, 438 U.S. 567, 577–78, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978); See *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).

This structure of shifting burdens of production is not the only way to prove an individual claim of disparate treatment, *McDonnell Douglas*, 411 U.S. at 802 & n. 13, 93 S.Ct. at 1824 n. 13, and our Circuit has declined to apply the *McDonnell Douglas/Burdine* standards mechanistically. This flexible approach, however, apparently has produced a certain degree of uncertainty regarding the application of burdens of proof in Title VII cases.

The first step in this classification process is to reiterate that although the burdens of production may shift between the plaintiff and the defendant, the burden of persuasion remains with the plaintiff at all times. *Jackson v. Pepsi-Cola Bottling Co.*, 783 F.2d 50, 54 (6th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 3298, 92 L.Ed.2d 712 (1986). Because the burden of *producing* is much lighter than the burden of *persuading*, most Title VII disparate treatment cases are decided on the pretext issue, on which the plaintiff has the burden of persuasion. On appeal, if the court determines that the plaintiff was at any time relieved of this ultimate burden, the case must be reversed and remanded for a correct allocation of the burdens. *Brooks v. Ashtabula County Welfare Dep't*, 717 F.2d 263, 268–69 (6th Cir.1983), *cert. denied*, 466 U.S. 907, 104 S.Ct. 1687, 80 L.Ed.2d 160 (1984).

In *Brooks*, the court criticized the district court's determination that the defendants in that case had failed to satisfy their burden of production: "Instead of assessing the defendants' justification in this new light, the court tested the justification for its credibility, veracity, and persuasiveness. The court found itself unpersuaded by the defendants' explanation ... In short, the court placed on the defendants the impermissibly heavy burden of persuasion and relieved the plaintiff of the burden of proof imposed by *Burdine*." *Id.* at 267. The court remanded the case to the district court for a correct application of the burdens of proof. *Id.* at 268–69.

Earlier, in *Grano v. Department of Development of the City of Columbus*, 637 F.2d 1073, 1080 (6th Cir.1980), this Court also found that the plaintiff had been erroneously relieved of her burden of proof. Again, the defendants in that case had produced a reason for their failure to promote a member of the protected class—a lack of qualifications. The district court found that the qualifications of the two candidates were not "greatly dissimilar on their face" and held that the defendants had failed to satisfy their burden of producing a legitimate, nondiscriminatory reason for their failure to promote the plaintiff. This Court reversed, reiterating the difference between a burden of persuasion and a burden of production. *Id.* at 1080, *citing Board of Trustees of Keene St. College v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978); *Furnco Construction Co. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

We believe that the district court in this case erred in determining that the Parole Authority failed to articulate a legitimate, nondiscriminatory reason for Burton's dismissal. The testimony of Valerian Kostyk, Supervisor of Unit One in the Youngstown Office, indicated that he regarded John Severn as more qualified than Burton, and therefore recommended Severn to his supe-

riors. Kostyk knew four of the five applicants, and had supervised both Severn and Burton. The district court understandably expressed a preference for hearing directly from Mr. Harris, the actual appointing authority, but he was unavailable to testify because of health reasons.

Testimony of the actual appointing authority is highly desirable in a Title VII case, because through direct and cross-examination the court may learn information bearing on the ultimate issue of intentional discrimination. However, the lack of such testimony and the reasons given for its unavailability may properly be assessed by the court. Further, a district court cannot require a defendant to prove its legitimate, nondiscriminatory reason, but merely to produce it. Therefore, the production of John Severn's recommendation by Supervisor Kostyk, bolstered by his stated reasons for the recommendation, is sufficient to satisfy the Parole Authority's burden of *producing* a legitimate, nondiscriminatory reason for its actions. Kostyk's recommendation was requested by the appointing authority, Harris, and he was extensively cross-examined concerning his reasons for making the recommendation.

We believe the Parole Authority satisfied its burden of production of a legitimate, nondiscriminatory reason for its failure to promote Burton. We remand the case to the district court for analysis of the issue of pretext, on which we express no opinion.[4]

Judgment reversed.

---

**4.** Because we reverse on the liability issue, we do not reach the question of the extent of the back pay award. We do note, however, that the district court expressly found that Burton voluntarily resigned his position on July 20, 1978. The purpose of the back pay award under Title VII is to place the aggrieved party in the position he or she would have been in but for the discrimination, *Shore v. Federal Express Corp.,* 777 F.2d 1155 (6th Cir.1985), not to award the plaintiff a windfall.